UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWARD D. DIXON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-179-JWD-RLB** |
| **GREYHOUND LINES, INC., GLI CORPORATE RISK SOLUTIONS, AND JAMES HESTER** | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS FOR SPOILATION**

Before the Court is a Motion for Sanctions for Spoilation of Evidence (Motion) filed by Plaintiff, Edward Dixon (Plaintiff) on August 20, 2014. (R. Doc. 43). Defendants, Greyhound Lines, Inc., GLI Corporate Risk Solutions and James Hester (Defendants),[1] filed an Opposition (R. Doc. 45) to Plaintiff's Motion on September 9, 2014. For the reasons given below, Plaintiff's Motion for Sanctions for Spoilation of Evidence is **DENIED**.

**I.  BACKGROUND**

In this personal injury action, Plaintiff claims he sustained injuries while traveling as a passenger on a Greyhound bus on January 3, 2012. (R. Doc. 1-1). While the bus was in transit, a tire blew out. (R. Doc. 1-1 at 1). The bus then pulled to the side of the interstate and the passengers, including Plaintiff, were allegedly instructed to remain on the bus. (R. Doc. 1-1 at 1). According to the Complaint, Defendants contacted a non-party, Southern Tire Mart, LLC (Southern Tire), to change the bus' tire. As Southern Tire worked to repair the blown out tire,

---

[1] After Defendants filed their Opposition (R. Doc. 45), the Court granted summary judgment in favor of Defendant, GLI Corporate Risk Solutions (GLI), and dismissed all claims against GLI (R. Doc. 46).

Plaintiff left his seat to use the bus' lavatory. While returning to his seat, Plaintiff claims "the bus fell off the jack and slammed to the ground, causing Plaintiff to fall to his knees and sustain injuries." (R. Doc. 1-1 at 1). Plaintiff claims that he reported his injury to the bus' driver, Defendant James Hester, at the time of the incident. (R. Doc. 43-1 at 3-4) (Pl. Depo., R. Doc. 43-3 at 30). According to Plaintiff, Mr. Hester instructed Plaintiff and other injured passengers to wait until the bus reached the "terminal" to fill out a C-4 form (incident report), as there were none on the bus. (R. Doc. 43-1 at 3-4). When he reached the terminal, Plaintiff claims he was not given a C-4 form to fill out, and was instead told to call Greyhound's hotline to report the incident. (R. Doc. 43-1 at 4). Two weeks later, Plaintiff called Greyhound's hotline. (R. Doc. 43-6). Following his call, Plaintiff received a letter from Greyhound dated January 21, 2012, thanking him for "expressing [his] concerns" and apologizing for his "unpleasant experience." (Letter, R. Doc. 43-7).

At his deposition, Mr. Hester testified that he did not remember any passenger, including Plaintiff, reporting injuries sustained during the tire's repair. (R. Doc. 45-1 at 4-5). Mr. Hester likewise did not recall any passengers requesting C-4 forms or instructing any passengers that he did not have C-4 forms on the bus and to ask for reports at the terminals. (Hester Depo., R. Doc. 45-1 at 4-5). Mr. Hester further testified that he filled out an M-7 or trip inspection form when the bus arrived at the terminal, which is routine and required by the Federal Motor Carrier Safety Administration's (FMCSA) regulations, 49 C.F.R. § 396.11(a)(4). (R. Doc. 45 at 2-3); (Hester Depo., R. Doc. 43-4 at 6). According to Defendants, the M-7 form completed by Mr. Hester on January 3, 2012 was only maintained for 3 months, in compliance with both Greyhound's document maintenance policy and the FMCSA's regulations, 49 C.F.R. § 396.11(a)(4).

During discovery, Plaintiff requested all "incident and investigative reports" and all "documents identifying procedure post-accident investigations" performed by Greyhound. (Pl.'s Req. for Prod. Nos. 2 & 25, R. Doc. 43-8 at 3, 9). In their November 26, 2013 responses, Defendants explained they did not have any information relative to Plaintiff's requests. (R. Doc. 43-8 at 3, 9). Plaintiff did not move to compel more complete responses to his discovery requests. At the end of Mr. Hester's April 23, 2014 deposition, Defendants claim Plaintiff's counsel "verbally requested" the M-7 form completed by Mr. Hester on January 3, 2012. (R. Doc. 45 at 3). According to Defendants, their counsel explained that the M7 form no longer existed as it was routinely destroyed 3 months after its creation. (R. Doc. 45 at 3-4). Beyond this verbal request, Defendants suggest Plaintiff did not make another request for the M-7 form or otherwise contact Defendants about the M-7 form until he moved for sanctions.

On August 20, 2014, Plaintiff filed the instant Motion for Sanctions, claiming Defendants "intentionally spoilated evidence by failing to provide [a C-4 incident form] to Plaintiff" and by failing to preserve the M-7 form completed by Mr. Hester on January 3, 2012. (R. Doc. 43-1). Plaintiff moves the Court to sanction Defendants by: (1) "striking every defense to liability Defendant has asserted"; (2) entering an "adverse evidentiary inference instructing the jury that Defendants destroyed [unfavorable] evidence"; and (3) requiring Defendants to pay Plaintiff's reasonable attorney's fees and costs incurred in filing this Motion. (R. Doc. 43-1 at 1). Defendants oppose the Motion suggesting Plaintiff is not entitled to any of the relief sought. (R. Doc. 45). Specifically, Defendants ask the Court to deny relief because (1) Plaintiff cannot show an intentional destruction of the evidence; and the documents at issue were either (2) not created, or (3) not maintained pursuant to Greyhound's retention policy and the FMCSA's regulations. (R. Doc. 45 at 1).

## II. APPLICABLE LAW

A party must preserve materials that it reasonably knows or can foresee would be material to a legal or potential legal action. *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006).[2] The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent. It does not depend on a court order. *See Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2003). If a party intentionally destroys evidence, the court has the discretion to impose sanctions. Severe sanctions may include "granting default judgment, striking pleadings, or giving adverse inference instructions." *Equal Employment Opportunity Comm'n v. Resources for Human Development* (*RHD*), 843 F. Supp. 2d 670, 672 (E.D. La. 2012).

A party is entitled to an order imposing severe sanctions if it can show that (1) the party with control over the evidence had a duty to preserve it at the time it was destroyed; (2) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense; and (3) the evidence was destroyed in bad faith. *Condrey*, 431 F.3d at 203; *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 617, 620, 646 (S.D. Tex. 2010). Typically, the court does not draw an inference of bad faith when the documents are destroyed under a routine policy. *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). However, bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents, and had explanations of spoliation that were not credible. *See Tantivity Communications, Inc. v. Lucent Technologies*, 2005 WL 2860976 (E.D. Tex. Nov. 1, 2005).

---

[2] A spoliation ruling is evidentiary in nature; and so, federal courts sitting in diversity typically apply federal law when considering the imposition of sanctions for spoliated evidence. *See King v. Ill. Central R.R.*, 337 F.3d 550, 557 (5th Cir. 2003).

4

Either way, the law is clear that a party is "not entitled" to an adverse inference instruction or to have defenses struck from the pleadings *unless* it provides evidence that its adversary intentionally and in bad faith disposed of the evidence. *Rimkus Consulting Grp., Inc.*, 688 F. Supp. 2d at 614.

## III. DISCUSSION

### A. Duty to Preserve the Evidence

To begin, Defendant had no duty to preserve any C-4 incident form relevant to Plaintiff's alleged injury, where no C-4 form was actually created. In other words, Defendant could not have a duty to preserve something that does not exist.

Turning to the January 3, 2012 M-7 form, Defendants "can only be sanctioned for destroying" the M-7 form if they "had a duty to preserve" it; and that duty arose before its routine destruction. *Consolidated Aluminum Corp.*, 244 F.R.D. at 339. In accordance with 49 C.F.R. § 396.11(a)(4), Greyhound only maintains M-7 forms for 3 months. (R. Doc. 45 at 3). Therefore, Defendants' duty to preserve must have arisen within 3 months of January 3, 2012.

Generally, a party's duty to preserve arises when it knew or should have known of the potential for future litigation. *Id.* "The future litigation must be probable, which has been held to mean more than a possibility." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006). "[D]etermin[ing] when a duty to preserve arises in a particular case and the extent of that duty requires careful analysis of the facts and circumstances" presented. *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 613.

Here, both the substance and timing of the information made available to Defendants, which may have triggered their duty to preserve the M-7 form, are unclear. The parties dispute whether Plaintiff actually informed Greyhound's driver, Mr. Hester, of his injuries at the time of

the January 3, 2012 incident.³ According to Plaintiff, he immediately informed Mr. Hester of the incident and his injuries. Upon arriving at the Baton Rouge station, Plaintiff further claims that other Greyhound employees instructed him to report the incident by calling a 1-800 number. (Pl.'s Depo., R. Doc. 43-3 at 30). Mr. Hester, however, testified that he did not recall any passengers reporting any injuries, or asking to file C-4 incident forms, on January 3, 2012. (Hester Depo., R. Doc. 43-4 at 5, 7). While Plaintiff and Mr. Hester gave conflicting accounts of the incident, it is clear that neither party documented any incident or injury occurring that day. Aside from the conflicting testimony, the record shows that Greyhound wrote to Plaintiff on January 21, 2012 to confirm Plaintiff's phone call to its 1-800 number. (R. Doc. 43-7). In its letter, Greyhound explains that Plaintiff called to express "concerns regarding the inconvenience [he] experienced while using [Greyhound's] services." (R. Doc. 43-7). Other than that, the vague letter does not reference any alleged injury or incident. (R. Doc. 43-7).

Plaintiff bears the burden of proving spoliation, including Defendants' duty to preserve. Because nothing was documented at the time of the alleged incident, whether Greyhound had a duty to preserve the M-7 form before its routine destruction depends on the circumstances of Plaintiff's January 2012 phone call. However, Plaintiff has not adequately described the call's circumstances for the Court to determine whether it was sufficient to trigger Greyhound's duty. Although he states that he "reported the accident and his injury" during the call (R. Doc. 43-1 at 6), Plaintiff does not further indicate whether he filed a formal complaint, informed Greyhound of his retention of counsel, threatened litigation, or even requested information relevant to the alleged incident. *Compare English v. Wal-Mart Stores, Inc.*, 2011 WL 3496092, at *5 (D. Nev.

---

³ (Pl.'s Depo., R. Doc. 43-3 at 30) (To the driver, "I said . . . I fell, man. I said, I hurt my knee. [The driver] made a point, anybody wants to file an incident report . . . it will have to be done at the bus terminal."); (Hester Depo., R. Doc. 43-4 at 7-8) ("Q: . . . [Y]ou don't recall any of the passengers telling you that there had been, like a sudden jerking or movement of the bus or that anyone had been injured.?; A: No.").

6

Aug. 10, 2011) (finding defendant did not breach its duty to preserve video footage even though defendant's employees did not follow policy of filling out incident report, where plaintiff did not file an accident report at the scene, and notice of litigation did not arise until three months later when Plaintiff's attorney requested the actual video), *and Putscher v. Smith's Food & Drug Centers, Inc.*, 2014 WL 2835315, at *7 (D. Nev. June 20, 2014) (rejecting plaintiff's argument that store's "duty to preserve surveillance footage of the slip and fall arose when Smith's completed an incident report"), *with Demena v. Smith's Food & Drug Centers, Inc.*, 2012 WL 3962318, at *2 (D. Nev. Sept. 10, 2012) ("incident report . . . combined with the fact that Plaintiff was transported out of the store on a gurney, with the assistance of emergency medical personnel, are sufficient to trigger Defendant's duty to preserve relevant evidence"), *and Essenter v. Cumberland Farms, Inc.*, 2011 WL 124505, at *3 (N.D.N.Y. Jan. 14, 2011) (duty to preserve tape arose where plaintiff's wife called defendant 7 days after husband's fall to file accident report and inform defendant of husband's injury and need for surgery, and tape showed "what occurred before, during, and after [husband's] fall").

And so, Plaintiff has not provided the Court with sufficient evidence that Defendants had a duty to preserve the M-7 form before its routine destruction. But even if the Court assumes that Defendants did have a duty to preserve the M-7 form, Plaintiff would still not be entitled to the relief sought. As explained below, Plaintiff cannot establish the remaining elements of his spoliation claim.

### B. Relevance of the Destroyed Evidence

Next, the Court must consider the relevance of the destroyed evidence. Generally, this determination requires a court to consider: "(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the non-

destroying party has suffered prejudice from the destruction of the evidence." *Consolidated Aluminum Corp.*, 244 F.R.D. at 346 & n.24; *see also Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) ("party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed evidence would have been of the nature alleged by the party affected by its destruction.").

The only issue remaining in this case is "whether Defendants were negligent in failing to evacuate the bus" while its tire was being changed. (Order on Defs.' MSJ, R. Doc. 46 at 10). Mr. Hester testified that he "absolutely" completed a Post-Trip Inspection/M-7 form upon arriving in Baton Rouge, as is required of every driver at the end of each trip. (Hester Depo., R. Doc. 43-4 at 6). Plaintiff contends that the M-7 form is "most certainly relevant to Plaintiff's claim" as it "would have described the subject accident and the cause of Plaintiff's injury." (R. Doc. 43-1 at 11). Moreover, because Defendants claim there is no documentation of the incident, Plaintiff insists this "leads to the suspicion that those documents that were 'absolutely' created by Hester" – i.e. the M-7 form – "contained information that would be helpful to the Plaintiff." (R. Doc. 43-1 at 11).

Typically, "speculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient." *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 616. Instead, the moving party must provide "some evidence that the documents would have aided it in the manner alleged in their inferences in order" for the court to find relevance and impose sanctions. *Consolidated Aluminum Grp.*, 244 F.R.D. at 347. Here, Plaintiff points to the "Road Failures" section of Greyhound's "Driver Training: Phase II Student Guide" (Driver Manual), which instructs drivers to "note the corrective action steps" taken on the M-7 form, following a road failure. (R. Doc. 43-6 at 104). Based on this instruction, Plaintiff

8

contends the M-7 form would describe the "accident and the cause of Plaintiff's injury" in a way that "would be helpful to the Plaintiff." (R. Doc. 43-1 at 11).

However, the Greyhound Driver Manual does not support Plaintiff's proposition that the M-7 form would have described the actual tire blow-out and what took place during its repair. To begin, the Driver Manual simply instructs drivers to record on the M-7 form whatever maintenance was performed to repair the problem causing the road failure. (R. Doc. 43-6 at 104). Defendants further clarify that, contrary to Plaintiff's assumption, M-7 forms "are not filled out for the purpose of recording an accident or incident." (R. Doc. 45 at 7). Instead, it is "nothing more than a checklist of the bus' overall condition filled out after every bus trip." (R. Doc. 45 at 7). The blank M-7 form attached to Defendants' Opposition confirms that it is a standard checklist of the bus' overall functioning. (R. Doc. 45-3). The M-7 form requires drivers to inspect certain parts of the bus and endorse them as either satisfactory or unsatisfactory. (R. Doc. 45-3 at 1). It further requires drivers to "Describe Unsatisfactory items in the 'REMARKS' Section," which is minimal. (R. Doc. 45-3 at 1). Most importantly, the M-7 form neither instructs, nor does it include space for, a driver to describe an incidental road failure, as Plaintiff suggests. (R. Doc. 45-3). Therefore, Plaintiff has not shown that the M-7 form "would have aided in the manner" he alleges. *Consolidated Aluminum Grp.*, 244 F.R.D. at 347

Moreover, the Court agrees with Defendants that Plaintiff has not been prejudiced by the destruction of the M-7 form. Ordinarily, severe sanctions "have been upheld when the spoliator's conduct was so egregious as to amount to a forfeiture of his claim" and "the effect of the spoliator's conduct was so prejudicial that it substantially denied [its opponent] the ability to defend the claim." *Rimkus Consulting Grp.*, 688 F. Supp. 2d at 618. Neither party disputes that the bus' tire blew out and needed to be repaired on January 3, 2012. (R. Doc. 45 at 7). Mr.

9

Hester confirmed this during his deposition (R. Doc. 45-1 at 2-3), and Defendants have produced maintenance records of the bus indicating the repair of a flat tire on January 3, 2012 (R. Doc. 43-8 at 13). And so, the Court finds Plaintiff has failed to establish the relevance element of his spoliation claim.

### C. Bad Faith

Finally, Plaintiff has not shown that Defendants acted in bad faith or with a "culpable state of mind" in failing to preserve the M-7 form. *See King*, 337 F.3d at 556 ("An adverse inference based on the destruction of potential evidence is predicated on the 'bad conduct' of the [destroying party]."). Typically, an adverse inference instruction is only given "where the facts of the case are extreme, such as where the destroyed evidence was the very automobile that was the subject of the products liability action." *Consolidated Aluminum Grp.*, 244 F.R.D. at 344. It then makes sense that courts generally "do not draw an inference of bad faith when documents are destroyed under a routine policy." *Russell v. University of Texas of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007); *see also Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) (same); *King*, 337 F.3d at 556 (same).

Here, Defendants have explained that "the M-7 form is maintained for only ninety (90) days pursuant to Greyhound's retention procedures, which [comply] with federal regulations," specifically 49 C.F.R. § 396.11(a)(4). (R. Doc. 45 at 6). Plaintiff ignores this, and simply insists that Defendants have "offered no reasonable explanation – or any explanation at all – " for not preserving the M-7 form. Plaintiff's refusal to acknowledge Defendants' explanation for the destruction is insufficient to show bad faith.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Plaintiff's Motion for Sanctions for Spoliation of Evidence (R. Doc. 43) is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 13, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**